CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
WILLIAM J. HEALY, SBN 146158
440 N. First Street, Suite 100
San Jose, California 95112
(408) 295-9555

Attorneys for Debtor/Appellant
    KIDS CONNECTION, INC.

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | Court of Appeals |
| | ) | Case No. |
| KIDS CONNECTION, INC., | ) | |
| | ) | |
| Petitioner | ) | |
| v. | ) | |
| | ) | |
| BURLINGAME CAPITAL | ) | |
| PARTNERS II LP, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |
| In re: | ) | District Court |
| | ) | Case No.  C-09-4195-MMC |
| KIDS CONNECTION, INC., | ) | |
| | ) | |
| Appellant | ) | **PETITIONER KIDS** |
| | ) | **CONNECTION'S** |
| v. | ) | **EMERGENCY EX PARTE** |
| | ) | **APPLICATION FOR STAY** |
| | ) | **PENDING APPEAL** |
| BURLINGAME CAPITAL | ) | |
| PARTNERS II, LP, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

1

CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
WILLIAM J. HEALY, SBN 146158
440 N. First Street, Suite 100
San Jose, California  95112
(408) 295-9555

Attorneys for Debtor/Appellant
    KIDS CONNECTION, INC.

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | Court of Appeals |
| | ) | Case No. |
| KIDS CONNECTION, INC., | ) | |
| | ) | |
| Petitioner | ) | |
| v. | ) | |
| | ) | |
| BURLINGAME CAPITAL | ) | |
| PARTNERS II LP, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |
| In re: | ) | District Court |
| | ) | Case No.  C-09-4195-MMC |
| KIDS CONNECTION, INC., | ) | |
| | ) | |
| Appellant | ) | |
| v. | ) | |
| | ) | |
| BURLINGAME CAPITAL | ) | |
| PARTNERS II LP, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

1

## PETITIONER KIDS CONNECTION'S EMERGENCY EX PARTE APPLICATION FOR STAY PENDING APPEAL

Petitioner/Appellant Kids Connection hereby petitions this Court for a supercedeas stay pending its present appeal in the District Court for the Northern District of California. A supercedeas stay is sought from this Court insofar as such stay has been refused by the District Court (per order dated October 9, 2009).

Petitioner believes that it is entitled to a supercedeas stay as a matter of right upon posting an appropriate bond for the $203,311.26 money judgment issued by the Bankruptcy Court (per minute order dated August 31, 2009).

## STANDARD OF REVIEW ON APPEAL

The correct standard of review for Ninth Circuit appeals is that the appellate court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re Ernst Home Center, Inc*., 221 B.R. 243, 248 (9th Cir. BAP 1998). The appellate court reviews the interpretation of statutory provisions *de novo*. Ibid. The abuse of discretion standard encompasses a *de novo* review of the law. *In re Irwin*, 338 B.R. 839, 848 (E.D.Cal. 2006).

## STATEMENT OF RELEVANT PROCEDURAL FACTS

On August 21, 2009, the motion of Burlingame Capital Partners LLP ("Burlingame") for order enforcing asset purchase agreement came on for hearing on shortened notice before the Bankruptcy Court for the Northern District of California, San Francisco Division, in the underlying Chapter 11 case herein. At

2

that hearing, the Bankruptcy Court directed Petitioner/Debtor's counsel Scott Goodsell to conduct and conclude an investigation into payroll claims asserted by Debtor's former employees and to pay out "up to" $203,310.66 by September 1, 2009. Amounts to be paid were "as identified in Ms. Kassebaum's declaration and discussed on the record." Debtor raised concerns that directing such payments would amount to mandating "super-priority" administrative claims in the Chapter 11 case. The Order confirming this ruling was entered on August 28, 2009. A copy of said Order is attached to the accompanying Healy declaration as Exhibit A.

On August 28, 2009, attorney Goodsell met with Mary Lynn Kassebaum; as a result, questions were raised in attorney Goodsell's mind regarding wage and vacation claims. Debtor filed an ex parte application to extend the payment deadline set forth in the subject Order.

On September 1, 2009, in response to Debtor's ex parte application to extend deadlines under the subject Order, the Bankruptcy Court extended such dates to September 8, 2009. A copy of the Bankruptcy Court's minute order is attached to the accompanying Healy declaration as Exhibit B. During the course of the telephonic hearing conducted in that matter, the Bankruptcy Court reiterated that it was granting "a super-priority administrative claim" to the claimants.

On September 4, 2009, Debtor timely filed its Notice of Appeal of the subject Order, together with its request for referral of said appeal to the District Court. On the same date, Debtor filed an ex parte application for a stay pending

appeal, or alternatively, pending a further application to the District Court for a stay pending appeal. On the same date, the Bankruptcy Court (Montali) issued a temporary stay extending time from September 8, 2009 to September 11, 2009, and directing that any further stay be obtained from the District Court. A copy of said order is attached to the accompanying Healy declaration as Exhibit C.

On September 9, 2009, Debtor's counsel contacted the District Court clerk's office and the Bankruptcy Court clerk's office to determine whether the Notice of Appeal had been transmitted to the District Court and learned that it had not, and would likely not be received by the District Court by September 11th. As a result, on September 10, 2009, Debtor filed a second ex parte application with the Bankruptcy Court for a stay pending appeal, or alternatively, pending a further application to the District Court for a stay pending appeal. On September 11th, the same date, the Bankruptcy Court (Carlson) issued a temporary stay extending time from September 11, 2009 to September 21, 2009, and also directing that any further stay be obtained from the District Court. A copy of this second Bankruptcy Court order is attached to the accompanying Healy declaration as Exhibit D.

On September 14, 2009, Burlingame filed its Cross-Appeal in this matter.

On September 14, 2009, Petitioner/Appellant Kids Connection filed its ex parte motion with the District Court for an order setting a briefing schedule on its intended motion for a stay pending appeal, which was granted on September 16, 2009. Pursuant to that scheduling order, on September 18, 2009, Appellant filed

its moving papers; on September 23, 2009, Appellee filed its response; and on September 25, 2009, Appellant filed its reply. At the subsequent hearing on September 30, 2009, the District Court directed that further briefing be filed to address whether F.R.Civ.P. Rule 62(a) supersedeas relief was available under Bankruptcy Rule 8005. On October 2, 2009, Appellant filed its supplemental brief, and on October 7, 2009, Appellee filed its supplemental response.

On October 9, 2009, the District Court issued an order denying supersedeas relief to Appellant Kids Connection. A copy of this District Court order is attached to the accompanying Healy declaration as Exhibit E.

## LEGAL ARGUMENT

In seeking stay relief from the District Court, Petitioner/Appellant Kids Connection offered two distinct bases on which its requested stay could be granted: first, as a discretionary stay pending appeal, premised upon customary injunctive relief standards; and second, as a "matter of right" stay of a money judgment, conditioned upon posting of appropriate security. For purposes of this instant petition, Petitioner/Appellant seeks only supersedeas stay relief.

Petitioner/Appellant believes that the District Court erred, as a matter of law, in refusing to grant a supersedeas stay on the subject Order on appeal. In order to prevent possible irreparable harm to Petitioner/Debtor during the pendency of this appeal, Petitioner seeks supersedeas relief from this Court for that purpose.

**A.     Availability of Supercedeas Stay**

Bankruptcy Rule 8005 provides:

A motion for a stay of the judgment, order, or decree of a bankruptcy court, *for approval of a supersedeas bond*, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.  Nothwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of the appeal on such terms as will protect the rights of all parties in interest.  A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion will show why the relief, modification, or termination was not obtained from the bankruptcy judge. *The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required*, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States, a bond or other security shall not be required.

F.R.Civ.P. Rule 62(d) provides that:

[w]hen an appeal is taken, the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule.  The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be.  The stay is effective when the supersedeas bond is approved by the court.

"When Rules 8005 and 7062 are read together, the procedure mandates

that an appellant desiring a stay of a money judgment or of one determining an

interest in property should present to the bankruptcy court a supersedeas bond in an

amount adequate to protect the appellee; an appellant desiring a stay of a judgment

that may not be stayed as of right should present to the bankruptcy court a motion for stay, stating reasons why the court should exercise its discretion to grant the stay." *Collier on Bankruptcy*, sec. 8005.03 (15th Ed.Rev. 2006).

"In the usual case, a stay of the judgment is obtainable before the bankruptcy court as of right simply by filing a supersedeas bond adequate to protect the interests of the appellee. The only questions likely to arise in such case are those pertaining to the amount of the bond or the sufficiency of the surety." *Collier on Bankruptcy*, sec. 8005.04 (15th Ed.Rev. 2006).

"Civil Rule 62(d) is primarily, but not exclusively, applicable where the judgment or order appealed from is one for money damages or for the payment of money. The stay is effective when the supersedeas bond is approved by the court. Under Bankruptcy Rule 8005, a motion for approval of a supersedeas bond must ordinarily be made to the bankruptcy judge in the first instance. The court also has the discretion to dispense with the requirement of a supersedeas bond and permit an unsecured stay upon showing by the debtor or the ability to satisfy the judgment during the entire appeals process. The appellate court can order that the bond be increased, decreased or eliminated." *Collier on Bankruptcy*, sec. 7062.06 (15th Ed.Rev. 2006). Hence, Bankruptcy Rule 8005 specifically allows for supersedeas bonds as security for stays pending appeal from judgments in contested matters, and if such judgments are in effect money judgments, F.R.C.P. Rule 62 is also applicable, particularly as to matter-of-right stays.

7

The leading nationally-cited case in this matter is the Ninth Circuit Bankruptcy Appellate Panel decision in *Farmer v. Crocker National Bank (In re Swift Aire Lines, Inc.)*, 21 B.R. 12 (9th Cir. BAP 1982). In that case, plaintiff bankruptcy trustee Farmer obtained a money judgment in the sum of $801,899 against defendant Crocker. Crocker appealed and moved for a stay of execution without posting a bond or, in the alternative, for approval of a supersedeas bond. Pursuant to plaintiff trustee's request, the trial court granted Crocker's request only on condition that it deposit the judgment amount in a certificate of deposit. The BAP held that the trial court had abused its discretion in declining to approve a supersedeas bond, and granted a stay pending appeal until the trial court passed on the sufficiency of Crocker's supersedeas bond.

In the *Farmer* case, the Panel noted that the bankruptcy trustee "argues that the matter-of-right supersedeas stay is not available in appeals from money judgments in bankruptcy and that, in any event, the court is free to depart from supersedeas standards for cause. The trustee's primary argument is to the effect that stays from bankruptcy court orders and judgments pending appeal are exclusively controlled by Bankruptcy Rule 805 [now Rule 8005] and that this rule eliminates stays as a matter of right. *We reject this contention*." *Ibid*, at 14 (emphasis added)

The *Farmer* decision elaborates:

8

Bankruptcy Rule 805 contains two references to supersedeas bonds, one providing that a motion "for approval of a supersedeas bond" is made to the bankruptcy judge and the other providing that a trustee may be required to give a supersedeas bond. No other reference to the supersedeas bond is found in the Bankruptcy Rules. Rule 62(d) F.R.C.P., made applicable in bankruptcy by Bankruptcy Rule 762 [now Rule 7062], provides that "the appellant by giving a supersedeas bond may obtain a stay ..." and that the "stay is effective when the supersedeas bond is approved by the court."

Without recourse to Rule 62(d) F.R.C.P., references to the supersedeas bond in Bankruptcy Rule 805 would be meaningless. For this reason, and because of B.R. 762, we conclude that both B.R. 805 and Rule 62(d) of F.R.C.P. control supersedeas stays in bankruptcy. Rule 62(d) F.R.C.P. is the modern-day source of the matter-of-right stay of execution pending appeal from money judgments. ... *Accordingly, we conclude that Rule 805 does not exclude stays as a matter of right in bankruptcy.*

Ibid, at 14 (emphasis added).

The *Farmer* ruling remains good law. In construing Rule 8005, a Montana bankruptcy court very recently explained: "Such rule incorporates the practice with respect to automatic availability of a stay pending appeal upon approval of a supersedeas bond. The purpose of the bond is to indemnify the party who was successful in the Bankruptcy Court against loss caused by an attempt to reverse the decision on appeal. *In re Theatre Holding Corp.*, 22 B.R. 884 (Bkrtcy.S.D.N.Y. 1982). See also, *In re Swift Aire Lines, Inc.*, 21 B.R. 12 (9th Cir. BAP 1982). *With the posting of sufficient supersedeas bond, under the above authorities, the standard for granting the stay becomes unimportant.*" *In re Yellowstone Mountain Club LLC*, (Bkrtcy.Mont. 7/19/2009) (attached) (emphasis added). See also, *In re MacNeal*, 393 B.R. 805, 809 (Bkrtcy. S.D. Fla. 2008)

("While the court has discretion to stay a proceeding without the posting of a supersedeas bond under Federal Rule of Bankruptcy Procedure 8005, I need not undertake such an analysis because Bonfiglio, Simpson and MacNeal are entitled to the stay based on the posting of the supersedeas bond"); *accord*, *In re Capital West Investors*, 180 B.R. 240 (N.D.Cal. 1995).

At the September 30, 2009 hearing before the District Court, the District Court considered discretionary stay factors, but requested further briefing on whether matter-of-right stays under Bankruptcy Rule 7062 (adversary proceedings) were also available under Bankruptcy Rule 8005 (contested matters). As set forth in *Farmer, Swift Aire, Yellowstone, MacNeal* and *Capital West* above, a matter-of-right stay is available under Bankruptcy Rule 8005, and the District Court erred in refusing to permit such stay based on posting of a supersedeas bond.

### B. The Subject Judgment is an Appealable Money Judgment

Although not disputed by the District Court, it is evident that the subject Order appealed from is an appealable money judgment.

In determining finality of matters, the United States Supreme Court has stated that "[n]o verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 170, 94 S.Ct. 2140 (1974). In a attempt to suggest a formula nonetheless, the Sixth Circuit has stated that "[a] final judgment is one which disposes of the whole subject, gives all the relief that was

contemplated, provides for reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree." *City of Louisa v. Levi*, 140 F.2d 512, 514 (6th Cir. 1999).

Courts have developed a pragmatic approach to deciding whether orders in bankruptcy cases are final – "recognizing that certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of the individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *Mason v. Integrity Insurance Co. (In re Mason)*, 709 F.2d 1313, 1317-1318 (9th Cir. 1983) ("The unique nature of bankruptcy procedure dictates ... that we take a pragmatic approach to the question of finality"); *Cannon v. The Hawaii Corp. (In re The Hawaii Corp.)*, 796 F.2d 1139, 1142 (9th Cir. 1986) ("We ... have developed liberalized rules of finality for bankruptcy cases arising under section 158(d)"). More recently, the Ninth Circuit has stated that a bankruptcy court order is final and appealable "where it (1) resolves and seriously affects substantial rights and (2) finally determines the discrete issues to which it is addressed." *Law Offices of Nicholas A. Franke v. Tiffany*, 113 F.3d 1040, 1043 (9th Cir. 1997).

In the *Hawaii Corp.* case, the Ninth Circuit also considered two additional doctrines applicable to finality under the more restrictive 18 U.S.C. sec. 1291 – namely, the *Cohen* collateral order doctrine and the *Forgay-Conrad* rule.

11

Under the *Cohen* collateral order doctrine, for an order to be reviewable, it must "(1) be independent and easily separable from the substance of other claims in the action; (2) present a need to secure prompt review in order to protect important interests of any other party; and (3) be examined in the light of practical, rather than narrowly technical, considerations." *Hawaii Corp., supra*, 796 F.2d at 1142, citing *Growth Realty Companies v. Regency Woods Apartments Ltd. (In re Regency Woods Apartments Ltd.)*, 686 F.2d 899, 902 (11th Cir. 1982); see also, *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949) (*Cohen* collateral order doctrine). Petitioner/Appellant submits that, consistent with the *Cohen* collateral order doctrine and for the reasons explained more expansively above, the subject Order is independent of other matters in Debtor's pending Chapter 11 case, and requires prompt review to protect Debtor's estate's interests, and must be reviewed at this time to afford any relief.

Under the *Forgay-Conrad* rule, "[a]n order is final if it requires the immediate turnover of property and subject the party to irreparable harm if the party is forced to wait until the final outcome of the litigation." *Hawaii Corp., supra*, 796 F.2d at 1142; *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 203-06 (1848); *Growth Realty, supra*, 686 F.2d at 902. Petitioner/Appellant submits that, consistent with the *Forgay-Conrad* rule, and for reasons explained more broadly above, the subject order requires immediate turnover of property (to wit, $203,310.66 in cash) and Debtor's estate/creditors will be subjected to irreparable

harm if forced to wait until the Chapter 11 case is closed many months or years into the future.

Applied to similar facts in *Hawaii Corp.*, this Court concluded that:

> Cannon would suffer irreparable injury if forced to wait until the conclusion of the case in district court to appeal the order requiring turnover of the stock. The order requires turnover of the shares and paves the way for a distribution of the remaining assets of the bankrupt's estate to the shareholders. Cannon would not share in the distribution. If this court were to hold that the order is not final, Cannon would be forced to wait until the case is concluded. If later successful on appeal, Cannon would then be forced to recover his pro rata share of the shareholder distribution from thousands of shareholders. The problems that would accompany such an action are manifest. Cannon's action is also easily separable from the other claims involved in the proceeding. Under the *Cohen* and *Forgay-Conrad* rule, this order is a final one.

*Hawaii Corp., supra*, 796 F.2d at 1143. Precisely the same circumstances and logic apply in the instant matter; ergo, under the Cohen doctrine and *Forgay-Conrad* rule, the subject Order appealed is a final order.

Similarly, in the *Franke* case, where the bankruptcy court had ordered certain funds disgorged with disposition pending further court order, the Ninth Circuit found that "appellate jurisdiction existed over the discrete issue of whether the bankruptcy court properly ordered the funds disgorged at all." *Franke, supra*, 113 F.3d 1043. "Orders requiring disgorgement resolve and seriously affect substantive rights." *Mosier v. United Education & Software*, 285 B.R. 442, 445 (C.D.Cal. 2002). Petitioner/Appellant submits that the subject "payout" order is

effectively a money judgment ordering disgorgement of funds held by the Debtor, and appellate jurisdiction therefore exists for the subject Order on appeal.

Finally, a disposition of a creditor's claim in a bankruptcy case is "final" for purposes of section 158(d) when the claim has been accepted and valued, even though the court has not yet established how much the claim can be paid given other unresolved claims. When one creditor's position is finally determined (subject only to proration at the end of the case to reflect the amount of assets and other allowed claims), the disposition is final. *In re Jartran, Inc.*, 886 F.2d 859, 886 (7th Cir. 1989); also, *In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir. 1983) (decision that claim was entitled to priority status was final judgment). In the instant matter, the subject Order effectively finally disposes of teacher/staff administrative claims in a final money-judgment order.

**C.     Absent Any Stay, Debtor's Estate May be Irreparably Harmed**

The Court will note that the subject Order being appealed does not contemplate disbursement of any funds to Appellee Burlingame – rather, the parties who will receive funds disbursed pursuant to the subject order are ***NOT parties to this appeal***. Effective relief is particularly difficult to fashion where rights of third parties are affected. *In re Southwest Products, Inc.*, 144 B.R. 104, 105 (9th Cir. BAP 1994). Because Appellee Burlingame itself is not receiving the subject funds, it might be practically impossible for this Court (or the District Court or the bankruptcy court) to simply order these claimants to return money to

the estate[1]. This unrecoverable disbursement of funds would therefore constitute an irreparable harm to Debtor's estate.

Total unpaid Chapter 11 administrative claims excluding teacher/staff claims are about $650,000.00; total teacher/staff claims are about $200,000.00; total available estate funds are about $350,000.00. If teacher/staff claims are paid as "superpriority" claims, they will receive 100% on their claims, and other similarly-situated claimants will receive about 23% on their claims. If no superpriority exists, all administrative claimants (including teachers/staff) will receive about 40% on their claims. (If certain asserted but as yet unresolved secured claims are allowed, administrative claimants may receive nothing).

/////

/////

**CONCLUSION**

WHEREFORE, Appellant requests that this Court issue a supercedeas stay pending conclusion of these appeals, subject to an order directing Appellant's counsel to continue holding $203,310.66 in its trust account or, alternatively

---

[1] In its District Court pleadings, Appellee Burlingame itself argued that "even if Appellant were to win the appeal, there are no circumstances under which the teachers would be required to disgorge wages paid to them, since the wages were already earned and must be paid under the Labor Code." (Burl. Opposition, p. 13). If this argument were correct, then it would absolutely militate for a stay pending appeal as the "harm" would be "irreparable."

15

depositing said sum with the Clerk of the Bankruptcy Court, pending resolution of this appeal and further order of the District Court or Bankruptcy Court.

DATED: October 13, 2009          CAMPEAU GOODSELL SMITH

                                 By ___/s/ William J. Healy_____
                                       William J. Healy
                                       Attorneys for Petitioner/Appellant

16

# ATTACHMENT

**Page 1**
**In re: YELLOWSTONE MOUNTAIN CLUB, LLC, Debtor.**
**Case No. 08-61570-11.**
**United States Bankruptcy Court, D. Montana.**
**July 16, 2009.**
**MEMORANDUM of DECISION**

RALPH B. KIRSCHER, Bankruptcy Judge.

In this Chapter 11 bankruptcy, after due notice, a hearing was held July 14, 2009, in Butte on: (1) the Motion for Stay Pending Appeal filed by Robert Sumpter on June 23, 2009 (docket entry no. 1070); (2) the Motion for Stay Pending Appeal filed by Desert Ranch LLLP on June 24 2009 (docket entry no. 1073); and (3) the Motion for Stay Pending Appeal filed by Timothy L. Blixseth on June 24, 2009 (docket entry no. 1076). The aforementioned motions are opposed by the jointly administered estates of the Debtors and by New CH YMC Acquisition, LLC and CrossHarbor Capital Partners, LLC ("CrossHarbor"). Robert Sumpter was represented at the hearing by Stephen Mackey of Billings, Montana; Desert Ranch LLLP and Timothy L. Blixseth ("Blixseth") were represented by Joel Guthals of Billings, Montana; the Debtors were represented by James A. Patten of Billings, Montana; and New CH YMC Acquisition, LLC and CrossHarbor were represented by Paul D. Moore of Boston, Massachusetts and Benjamin P. Hursh of Missoula, Montana. Robert Sumpter ("Sumpter") and Ronald Greenspan

Page 2

("Greenspan") testified. No exhibits were offered into evidence.

BACKGROUND

The Debtors, up until August of 2008, were controlled by Blixseth as the sole Class A Shareholder through his holding company, Blixseth Group, Inc. ("BGI"). Approximately 13% of the stock in Debtors was owned by Class B Members who were referred to as the Class B Shareholders. BGI was an Oregon sub-S corporation, which was solely owned by

last

Blixseth as President and CEO from 1999 to mid-August of 2008. In August of 2008, Blixseth and his former spouse, Edra Blixseth, settled a long and contentious divorce proceeding, and as part of the marital settlement, Edra Blixseth was awarded BGI. As a consequence of receiving BGI, Edra Blixseth also assumed control of the Debtors in August of 2008.

The Debtors have experienced cash flow problems for numerous years and the evidence presented in this case and the related Adversary Proceedings shows that the Debtors, while under Blixseth's control, secured a $375 million loan from Credit Suisse on September 30, 2005. The burden of the $375 million loan, coupled with the economic downturn, was disastrous for the Debtors and resulted in the Debtors seeking protection under the Bankruptcy Code on November 10, 2008.

The disputes and resulting litigation in this case between die Debtors, the Official Committee of Unsecured Creditors, Credit Suisse and CrossHarbor was of a magnitude never seen before in this Court. The disputes started day one when the Debtors sought to secure debtor-in possession ("DIP") financing. Originally, Credit Suisse was slated to provide DIP financing, but when Credit Suisse was unable to secure the requisite voter approval for the DIP financing, the Debtors turned to CrossHarbor. The Court ultimately approved CrossHarbor's DIP

Page 3

financing, which financing was modeled after the DIP financing proposed by Credit Suisse. Approval of DIP financing was only the first dispute in a series of disputes, including two Adversary Proceedings that initially involved the

Debtors, the Official Committee of Unsecured Creditors and Credit Suisse. Blixseth, upon request, was allowed to intervene in those proceedings.

However, after a lengthy trial and following an incredible number of hearings, many held on an emergency basis, the Debtors, the Official Committee of Unsecured Creditors, Credit Suisse and CrossHarbor, during the eleventh hour of the auction of the Debtors' assets, reached a global resolution of their disputes.1 That global resolution is reflected in the Debtors' Third Amended Chapter 11 Plan, which Plan was confirmed by Order entered June 2, 2009.

Sumpter seeks a stay of the Court's June 2, 2009, Confirmation Order as it relates to the Debtors' rejection of Sumpter's Residential Membership agreement. Desert Ranch, LLLP seeks a stay of the Order confirming the Debtors' Chapter 11 Plan as it relates to Desert Ranch, LLLP's claim and treatment under the Chapter 13 Plan pending a determination of said appeal. Blixseth seeks an order staying the provisions of the Debtors' Third Amended Chapter 11 Plan, the June 2, 2009, Confirmation Order, including the findings of fact and conclusions of law stated therein, with respect to the effect of the Chapter 11 Plan, and the Court's June 2, 2009, Memorandum of Decision with respect to the following provisions:

1. The determinations, findings and conclusions that with respect to Appellant, the bankruptcy case and the Chapter 11 Plan were filed in good faith, and that there was no evidence of bad faith toward Appellant.

Page 4

2. The determinations, findings, conclusions and Chapter 11 Plan provisions concerning the effect and enforceability of pre-petition waivers and releases provided to Appellant by Debtors.

3. All determinations, findings and conclusions that impact upon or affect issues pending in Adversary Proceeding No. 09-00014.

4. The effect and enforceability of the exculpatory and release clauses against Appellant that are contained in the Chapter 11 Plan.

5. The effect and enforceability of the Credit Suisse settlement against Appellant incorporated in the Debtors' Third Amended Chapter 11 Plan.

Sumpter argues that a stay pending appeal as it relates to him is necessary because be cannot presently enjoy the benefits of die Yellowstone Club and each day that is lost, is a day that he cannot get back. Sumpter purchased his unique Residential Membership on July 9, 2008, while the Debtors were under Blixseth's control. Sumpter's Residential Membership is unique from other Residential Membership, excluding Pioneer and Frontier Memberships, in that Sumpter can enjoy all die amenities at the Yellowstone Club without paying any annual membership dues. In addition, if Sumpter elects to sell his residential lot to a third party, Sumpter's Residential Membership provides that a Residential Membership will be reserved for the third party buyer and Sumpter will be allowed to convert his Residential Membership to a National Membership for an additional deposit of $50,000, with no payment of annual dues.

The unique aspects of Sumpter's Residential Membership are a deterrent to any potential buyer of the Debtors' assets because all parties agree that the Yellowstone Club cannot continue to operate at its historical deficits. If members, such as Sumpter, want to enjoy the benefits of the Yellowstone Club, they must be made to pay their fair share. Sumpter disagrees.

Page 5

DISCUSSION

A moving party seeking a stay pending appeal is governed by F.R.B.P. Rule 8005.2 In the case of Martinson v. Towe (In re Towe), 14 Mont. B.R. 1, 2-3 (Bankr. D. Mont 1994), this Court set forth the standards for evaluating motions filed under Rule 8005:

last

Rule 8005 provides that a bankruptcy judge "may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." This Court has explained in construing Rule 8005:

Such rule incorporates the practice with respect to automatic availability of a stay pending appeal upon approval of a supersedeas bond. The purpose of the bond is to indemnify the party who was successful in the Bankruptcy Court against loss caused by an attempt to reverse the decision upon appeal. In re Theatre Holding Corp., 2,2 B.R. 884 (Bankr. S.D.N.Y. 1982). See, also, In re Swift Air Lines, Inc., 21 B.R. 12 (9th Cir. BAP 1982). With the posting of sufficient supersedeas bond, under the above authorities, the standard for granting the stay becomes unimportant.

In the instant case, Sumpter, Desert Ranch, LLLP and Blixseth have not filed a

Page 6

supersedeas bond. In addition, said parties have not offered to file a supersedeas bond.3 Therefore, Sumpter, Desert Ranch, LLLP and Blixseth must satisfy the same tests required for the granting of an injunction:

A party seeking relief under Rule 8005 must show (1) that he will suffer irreparable harm unless the stay is granted; (2) a likelihood of success on the merits of the appeal; (3) that the other parties will suffer no substantial harm if the stay is granted; and (4) that the public interest will not be harmed if the stay is granted. In Matter of Baldwin United Group, 45 B.R. 385, 11 C.B.C. 1195 (Bankr. S.D.Ohio 1984). The same tests apply for granting of an injunction. See, Regents of University of California v. ABC, Inc., 747 F.2d 515 (9th Cir. 1984)

Hoeger v. Teigen (In re Teigen), 9 Mont.B.R. 523, 523-25 (Bankr. D. Mont. 1991).

Metro North State Bank v. Barrick Group, Inc. (In re Barrick Group, Inc.), 99 B.R. 513, 515 (Bankr, Conn. 1989), notes that several courts have held that an appellant must clearly establish all four injunction factors. Id. citing Baldwin United Group, supra, and John P. Maguire & Co., Inc. v. Sapir (In re Candor Diamond Corp.), 26 B.R. 844, 847 (Bankr.S.D.N.Y.1983). However, the Court in Barrick Group goes on to state that "the more authoritative and better approach is that the four factors should be used as guides. See Hilton [v. Braunskill], supra, 481 U.S. [770,] 777, 107 S.Ct. [2113,] 2119, [95 L.Ed.2d 724 (1987)] ("[The] stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."); In re Marine Pollution Service, supra, 89 B.R. at 345; In re Roth American, Inc., supra, 90 B.R. [94,] 95 [(Bankr. M.D.Pa. 1988)]. This reading of the Rule 8005 is consistent with its plain language." Id. The Supreme Court in Hilton discussed Fed. Rule App. Proc. 8(a) from which the first, second and fourth sentences of Rule 8005 were adopted.

Page 7

One controlling principle is that issuance of a stay pending appeal, like a preliminary injunction, rests with the sound discretion of the trial court. Hartigan v. Pine Lake Village Apartment Co., (In re Pine Lake Village Apartment Co., 2,1 B.R. 395 (S.D. N.Y. 1982); Regents of Univ. of Cal. v. American Broad. Companies, Inc., 747 F.2d 511, 515 (9th Cir. 1984).

Sumpter, Desert Ranch, LLLP and Blixseth each argue that the Debtors' and the public's interest will not be substantially harmed by granting their motions for stay pending appeal, but the record clearly shows otherwise. If the confirmation of Debtors' Chapter 11 Plan is stayed, even partially, the CrossHarbor sale may very likely be derailed and Debtors will not be able to continue with operations as a going concern. Such result would have a devastating effect on the owner-members, creditors and even the local economy at Big Sky. A stay is not

fast

appropriate when the effect of the stay is to stay consummation of a plan. In re Public Sen'. Co. of New Hampshire, 116 B.R. 347, 350 (Bankr. D.N.H. 1990), instructs that the possible failure of any plan of reorganization as a consequence of a stay constitutes significant injury to creditors. A stay in the case sub judice would outweigh any minimal affect on each of the Appellants as the effect of a stay will most likely prevent the closing of the sale to CrossHarbor, causing the cessation of Debtors' business operations, termination of all employees, and complete frustration of the Debtors' confirmed plan. As a corollary to such effect, the Appellants offer no bond to protect the Debtors from the obvious harm that would occur.4

Further, it is clear to the Court that none of the Appellants will prevail on appeal. As to Sumpter, CrossHarbor rejected his Residential Membership, which fails to provide annual

Page 8

payment of fees to cover operating expenses of the Yellowstone Club, which are being paid by other members of the Yellowstone Club as a condition of their memberships. Thus, there was sound business judgment expressed by the Debtors and CrossHarbor in rejecting Sumpter's unique Residential Membership. As to Blixseth, such Appellant does not seek a stay with respect to enforcement of the entire plan, but only requests that certain plan provisions be stayed. In discussing a request for a "partial stay", the court in. In re Convenience USA, Inc., 290 B.R. 558, 561 (Bankr. M.D.N.C. 2003), explained that "it is difficult to conceive of a situation in which such relief would be appropriate because to grant such relief, in effect, is to modify die plan of reorganization that was submitted to the creditors and other parties in interest, who voted to approve the plan submitted to diem, and not a plan subsequently tailored to suit a disgruntled appellant. Such an anomalous result is totally inconsistent with the disclosure requirements under § 1125 of the Bankruptcy Code and the right of creditors, pursuant to § 1126, to vote on the plan disclosed to them." The same reasoning applies to Desert Ranch, LLLP's request for a

partial stay regarding the Plan's treatment of its claim.

Moreover, Desert Ranch, LLLP's claim is not impaired as the Plan leaves unaltered the contractual rights of the holders of secured claims, particularly where the Debtors have agreed that in the event this Court determined that Desert Ranch, LLLP is in fact entitled to an unsecured deficiency claim, that Class 4 of the Third Amended Plan "governs the treatment of any such claim." In sum, the Plan by its terms does not change Desert Ranch, LLLP's legal rights.

With regard to Sumpter, that Appellant is not likely to prevail on appeal. In accordance with the terms of the membership agreement to purchase equity interests in the Reorganized

Page 9

Debtors, CrossHarbor had the right to designate which executory contracts and unexpired leases would be assumed and which would be rejected. CrossHarbor rejected Sumpter's Residential Membership agreement because it offered no benefit whatsoever to the Reorganized Debtors due to Sumpter's "free ride" in not sharing in payment of annual operating expenses. Thus, rejection was warranted under the "business judgment" rule. In re Pomona Valley Medical Group, 47,6 F.3d 665 (9th Cir. 2007). Rejection was not "manifestly unreasonable". This Court also recognized that Sumpter waived his objection by not appearing at the confirmation hearing and thus, was not entitled to relief under F.R.Civ.P 59 or 60.

Blixseth also challenges die Debtors' good faith in filing the Third Amended Plan. This Court made specific findings that die Plan was filed in good faith and not by any means forbidden by law. In sum, the Plan is not contrary to the Bankruptcy Code. In re Sylmar Plaza, LP, 314 F.3d 1070 (9th Cir. 2002). A plan proposed in good faith is defined as one that satisfies the purposes of the Bankruptcy Code. Blixseth's generalized allegations of misconduct of parties prior to the bankruptcy is irrelevant to the test of good faith.

last

Blixseth also argues that the exculpatory provision of Section 8.4 is wrong under the good faith standard. However, the clause is a standard exculpatory provision and does not impermissibly release any entity or individual from liability for willful misconduct or gross negligence. It merely protects the described entities and individuals from claims arising in connection with die bankruptcy cases and is thus perfectly proper. In re Enron Corp., 32,6 B.R. 497 (S.D.N.Y. 2005).

Finally, none of the Appellants have shown that they will suffer irreparable injury if the stay is not granted. Indeed, all parties must satisfy each of the four requirements in order to

Page 10

secure a stay. Failure to satisfy any one of the four prongs dooms the moving party's motion. In re Irwin, 33,8 B.R. 839 (E.D.Cal. 2006). For all the reasons set forth in the Debtors' Opposition to Motion for Stay Pending Appeal, the Court concludes that the Appellants' Motions lack merit and must be denied. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1. The Motion for Stay Pending Appeal filed by Robert Sumpter on June 23, 2009 (docket entry no. 1070), is DENIED;

2. The Motion for Stay Pending Appeal filed by Desert Ranch LLLP on June 24, 2009 (docket entry no. 1073), is DENIED; and

3. The Motion for Stay Pending Appeal filed by Timothy L. Blixseth on June 24, 2009 (docket entry no. 1076), is DENIED.

---------------

Notes:

1. Credit Suisse and CrossHarbor were the only parties interested in acquiring the Debtors' assets at the auction. Credit Suisse participated in the auction for the sole purpose of protecting its claim.

2. Rule 8005 reads:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to die district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.

3. Blixseth requests in his Motion "that the stay order be imposed without a requirement that [Blixseth] post bond in that the stay requested does not effect or create monetary issues or burdens on the bankruptcy estate, the Debtors, or their successors under the Chapter 11 Plan[.]"

4. A bond would have to be filed in an amount of at least $ 115 million to preserve the status quo.

---------------

last